# UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **K.M. (a minor, by and through her parent and guardian ad litem, Brenda Markham; BRENDA MARKHAM,**<br><br>Plaintiffs,<br><br>v.<br><br>**TEHACHAPI UNIFIED SCHOOL DISTRICT, et al.,**<br><br>Defendants. | 1:17-cv-01431-LJO-JLT<br><br>**MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (Doc. 15)** |

## I. INTRODUCTION

Pending before the Court is Defendants' motion to dismiss Plaintiffs' Second Amended Complaint ("SAC"). The SAC alleges K.M., who is a 9-year-old autistic child, was prescribed 40 hours per week of Applied Behavior Analysis ("ABA") therapy by her pediatrician, to be administered by a trained ABA provider. Plaintiffs allege K.M.'s school in the Tehachapi Unified School District (the "District"), refused to allow an insurance-funded therapist to accompany K.M. during school to provide the prescribed therapy. Plaintiffs contend the District's denial was discrimination on the basis of K.M.'s disability violating the American's with Disabilities Act of 1990 ("ADA"), Title V of the Rehabilitation Act of 1973 (the "RA"), the California Unruh Civil Rights Act, and violating Sections 1983 and 1985 of Title 42 of the United States Code. Defendants seek dismissal of Plaintiffs' complaint under Federal Rule of Civil Procedure 12(b)(6) arguing Plaintiffs have failed to exhaust administrative remedies

1

required under the Individuals with Disabilities Education Act ("IDEA"), mandating dismissal of Plaintiffs' ADA and RA claims, and that all Plaintiffs' claims are otherwise insufficiently pled.

For the reasons set forth below, Defendants' motion to dismiss Plaintiffs' complaint is GRANTED in part and DENIED in part.

## II. FACTUAL BACKGROUND

K.M. is a 9-year-old girl with autism; she has average intelligence, but due to her autism, she has difficulty with verbal language skills and acquiring socially acceptable means for expressing emotions such as fear, frustration, anger, her desire for something, or sadness. (SAC, ¶ 1.) She also has deficits in her ability to recognize danger or unsafe circumstances, she has only recently begun speaking, and is still learning to communicate commensurate with her cognitive ability and chronological age. (*Id.*) When K.M. was diagnosed with autism, she received ABA therapy through her insurance or through Kern County in the home setting. (*Id.*, ¶ 3.) This therapy consists of a treatment plan implemented by a trained therapist who works one-on-one with K.M. to address specific developmental and social behavioral goals. (*Id.* ¶ 5.) The therapy uses positive reinforcement when K.M. displays appropriate behaviors, and specific pre-determined non-responses when K.M. displays maladaptive behaviors. (*Id.*)

K.M. began attending the District's schools in preschool, and the District has always acknowledged she is eligible for special education under the IDEA due to her autism. (SAC, ¶ 2.) Since entering school, K.M. has sought the provision of ABA treatment through the District for the school setting, pursuant to her asserted right under the IDEA, but the District has consistently denied this request. (*Id.*, ¶ 6.) K.M's insurance has denied coverage for ABA treatment in the school setting, asserting it is the financial obligation of the District to fund and provide this therapy. (*Id.*) For only a short time between November 2014 and February 2015, the District provided funding for K.M.'s ABA therapist to attend school with K.M. (*Id.* ¶ 7.) However, this was only in response to K.M. ingesting another child's narcotics seizure medication while at school without ABA treatment and supervision.

(*Id.*) The District-provided ABA treatment was discontinued in February 2015 when the District insisted that K.M. be removed from school and placed in a completely segregated autism program in Bakersfield without 1:1 ABA therapy. (*Id.*, ¶ 8.) K.M. successfully litigated this removal issue and was not moved to the segregated facility in Bakersfield; but, the District continued its refusal to provide any 1:1 ABA therapy. (*Id.*)

In 2016, funding for the ABA treatment was approved by K.M.'s insurance company, as prescribed by K.M.'s treating pediatrician. (SAC, ¶ 9.) The District denied K.M.'s request for her ABA therapist to provide treatment during school without any discussion by K.M's IEP (Individualized Education Program) team. From August 2016 to June 2017, K.M. was kept home from school so that she could receive the doctor-prescribed 40-hour-per-week ABA therapy.

K.M. pursued her administrative remedies available under the IDEA to challenge the District's 2016 refusal to permit her insurance-funded therapist to accompany K.M. at school. K.M. claimed that not only did the refusal interfere with her educational opportunities under the IDEA, but it also interfered and discriminated against her by precluding her basic access to the school under the RA, the ADA, and the Unruh Civil Rights Act. (SAC, ¶ 43.) When these claims were presented to an ALJ pursuant to administrative processes under the IDEA, the District argued the ALJ had no jurisdiction to hear any of the claims because, at their core, they involved medical access issues rather than the provision of a FAPE. (Doc. 20, p. 28 ("Student's case is fundamentally about access based on a medical accommodation, this is a question under these cope of Section 504 and the ADA, as such, OAH has no jurisdiction to hear the matter.").)

After additional briefing was permitted by the ALJ following the Supreme Court's decision in *Fry v. Napoleon Community Schools*, the ALJ concluded he had jurisdiction over the two issues then pending in the case that involved the provision of a FAPE: (1) Did the District deny Student a FAPE by interfering with her parents' right to participate in the IEP process when it did not allow Student to receive ABA treatment as prescribed by Student's doctor?'; and (2) Did the District deny Student a

3

FAPE by failing to include a health plan in Student's IEP allowing for the provision of ABA treatment at school as prescribed by Student's doctor? The ALJ concluded, however, that he did not have jurisdiction to hear K.M.'s claims under the ADA, the RA, the Unruh Act, or the Section 1983 or Section 1985 claims. After the pre-hearing conference, the ALJ issued an order identifying only the first issue for hearing: whether the District denied Student a FAPE by interfering with her parent's right to participate in the IEP program process when it did not allow Student to receive ABA treatment at school as prescribed by Student's doctor.

After a hearing on the single remaining issue, the ALJ found K.M's parents' rights to participation in the IEP process were violated, and the District was ordered to hold an IEP meeting for the purpose of openly and honestly discussing and considering the ABA prescription and K.M.'s mother's request that the District allow the ABA insurance-funded aide to accompany Student on campus. (SAC, ¶ 53.) K.M. did not appeal this ALJ decision, ostensibly because Plaintiffs were the prevailing parties.

Plaintiffs then instituted suit in this Court in October 2017, pursing the claims under the ADA, the RA, the Unruh Civil Rights Act, and 42 U.S.C. §§ 1983 and 1985 which the ALJ had dismissed for lack of jurisdiction during the administrative process.

### III. LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is a challenge to the sufficiency of the allegations set forth in the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule 12(b)(6) is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dept*., 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim upon which relief may be granted, the Court accepts as true the allegations in the complaint, and construes the pleading in the light most favorable to the party opposing the motion. *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Under Rule 8, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A plaintiff is required to allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).

While Rule 8 does not require detailed factual allegations, "it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. In practice, "a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562. In other words, the complaint must describe the alleged misconduct in enough detail to lay the foundation for an identified legal claim. To the extent the pleadings can be cured by the allegation of additional facts, the Court will afford the plaintiff leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc*., 911 F.2d 242, 247 (9th Cir. 1990) (citations omitted).

## IV. JUDICIAL NOTICE

Both parties submitted portions of the Administrative Record for the proceedings held before the Office of Administrative Hearings ("OAH"). Defendants expressly seek judicial notice of the Administrative Law Judge's April 19, 2017, order on Plaintiffs' claim the District failed to provide a FAPE to K.M. by interfering with K.M.'s mother's right to participate in the IEP process when the District denied Plaintiffs' request for ABA therapy during school by an insurance-funded ABA therapist. (Doc. 15-1.) In support of their opposition brief, Plaintiffs submit the District's brief filed with the ALJ on January 27, 2017, that argued the OAH lacked jurisdiction over Plaintiffs' claims, and

specifically Plaintiffs' claims under Section 504 of the Rehabilitation Act and the ADA. (Doc. 20, Exhibit A, pp. 27-37.)

Federal Rule of Evidence 201 permits a court to take judicial notice of facts not subject to reasonable dispute and "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). A court may take judicial notice of records and reports of administrative bodies. *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986), *abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S.104 (1991). When courts take judicial notice of administrative records, however, such notice is limited to the existence of the documents themselves including the findings therein, and not the contents of the documents for the truth of the matters asserted. *See Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).

Beyond the two documents submitted by the parties, the Court also ordered the parties to produce additional portions of the Administrative Record to provide a complete context for the documents submitted by the parties and to show what was argued to, and decided by, the ALJ with regard to Plaintiffs' RA and ADA claims. (*See* Docs. 23, 24.) There is no dispute these documents are accurate and complete copies of what was submitted to and decided by the ALJ. These documents are relevant and will be judicially noticed for their existence and what was decided by and argued to the ALJ, but are not noticed for the truth of the matters asserted therein.

## V. ANALYSIS

K.M. claims the District's refusal to permit her insurance-funded therapist to accompany her at school and provide therapy in that environment pursuant to her pediatrician's medical prescription discriminated against her on the basis of her disability under the RA, the ADA, and California's Unruh Civil Rights Act; she also seeks damages for violation of her rights under 42 U.S.C. §§ 1983 and 1985. Defendants argue K.M. has failed to exhaust her administrative remedies to state claims under the RA or the ADA. Moreover, Defendants argue, even to the extent the claims are properly exhausted, all

K.M.'s claims are insufficiently pled.

**A.      Exhaustion of Administrative Remedies**

Congress passed the IDEA to ensure that all children with disabilities have access to a FAPE that meets their unique needs and prepares them for further education, employment, and independent living.  20 U.S.C. § 1400(d).  Disputes between school districts and parents about implementation of a FAPE for individual students are subject to the administrative procedures outlined in Section 1400 of Title 20 of the United States Code.  Only upon conclusion of these administrative procedures may an aggrieved party file an action in state court or district court.  20 U.S.C. § 1400(i)(2)(A).

The IDEA, however, is not the only statute pertaining to children with disabilities in school settings.  The prohibition of disability discrimination in the ADA and Title 5 of the RA overlap with the IDEA:  (1) Title II of the ADA prohibits any "public entity" from discriminating based on disability; and (2) Section 504 of the RA prohibits discrimination based on disability in any "federally funded program or activity."  42 U.S.C. §§ 12131-32; 29 U.S.C. § 764(a).

Because of the imbricating nature of these disability-related statutes, Congress provided a "[r]ule of construction" to explain how the IDEA interacts with other federal statutes:

> Nothing in this chapter shall be construed to restrict or limit the rights, procedures, and remedies available under the Constitution, the Americans with Disabilities Act of 1990, [T]itle V of the Rehabilitation Act of 1973, or other Federal laws protecting the rights of children with disabilities, except that before the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subjections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter.

20 U.S.C. § 1415(*l*).

Thus, the IDEA exhaustion provision in Section 1415(*l*) does not *necessarily* apply to other statutes.  As clarified recently by the United States Supreme Court, the IDEA exhaustion requirement extends to other types of disability discrimination claims *only* where the essence of those claims seek relief for a denial of FAPE.  *Fry v. Napoleon Comm. Sch.*, 137 S.Ct. 743 (2017).

*Fry* involved a child, E.F., with a severe form of cerebral palsy who relied on a service dog, Wonder, to assist her with various activities. Pursuant to the IEP process, E.F.'s school district forbade her from bringing Wonder to school, offering E.F. a human aide instead. *Id.* at 751. The Frys filed suit against the school district asserting violations of the RA and the ADA, which the trial court dismissed for lack of administrative exhaustion under the IDEA as the relief sought was available under the IDEA. On appeal, the Supreme Court reversed, explaining that "[w]hat matters is the crux – or, in legal speak, the gravamen – of the plaintiff's complaint[.]" *Fry*, 137 S.Ct. at 755. To make this determination, the Court held, it is not dispositive whether the claims include precise words such as IEP or FAPE. *Id.* Rather, courts should "attend to the diverse means and ends of the statutes covering persons with disabilities." *Id.* While the IDEA ensures children individualized educational services, Title II of the ADA and Section 504 of the RA guarantee non-discriminatory access to public institutions, within and beyond the doors of the schoolhouse. *Id.* The same conduct might violate all three statutes, or a complaint brought under Title II and Section 504 "might instead seek relief for discrimination, irrespective of the IDEA's FAPE obligation." *Id.* at 756. The Court held a "complaint seeking redress for those other harms, independent of any FAPE denial, is not subject to § 1415(*l*)'s exhaustion rule . . . . " *Id.*

To aid lower courts in determining whether a complaint seeks redress for the denial of a FAPE or, instead, for wrongs independent of a FAPE, the Court posed two questions to use as "clues": (1) could the claim be brought if the alleged conduct occurred at a public facility that was not a school?; and (2) could an adult, such as a visitor or an employee, have pressed essentially the same grievance? Applying these questions to E.F., the Court noted the Frys were not challenging the district's provision of educational opportunities; by providing a one-to-one human aid, E.F.'s parents conceded that all of E.F.'s educational needs were satisfied. Wonder's assistance, however, was not simply about accessing educational services. Wonder assisted E.F. in living independently by helping her with activities such as retrieving dropped items, helping her balance, opening and closing doors, turning on and off lights,

8

helping her take her coat off, and helping her transfer to and from the toilet. Precluding Wonder's assistance, the Court reasoned, was like requiring a student who used a wheelchair to be instead carried by an aid or requiring a blind student to be led around by a teacher instead of permitting that student to use a guide dog or a cane. This type of claim could be pressed at any public facility, not just a school, because it did not center on providing appropriate educational services, it centered on accommodating access of a disabled person to a public facility. It could also be brought by a visitor or an employee seeking equal access to the facilities as the accommodation, at its heart, has little to do with the provision of educational services.[1]

The clues posed in *Fry* indicate here the gravamen of K.M.'s Title II and RA claims do not seek remedies for the denial of a FAPE. The provision of an ABA therapist may indeed tangentially involve access to education in the sense that without the therapy, K.M. may not be able to access the curriculum appropriately.[2] Nevertheless, the central tenant of Plaintiffs' claims here is that her medically prescribed treatment for her disability is not being accommodated and thus K.M. is precluded from access to the school itself. Without appropriate ABA therapy at school, Plaintiffs assert K.M. is unsafe because she does not have guidance on appropriate behaviors with peers, she has wandered off during school outings, she has ingested another child's medication, and has come home with unexplained bruises and a severe sunburn due to being left outside for hours. The need for this therapy centers on K.M.'s development, her ability to focus on tasks and interact with peers, and to maintain her safety – not her educational needs. As such, this claim could be pressed against any place of public accommodation that refused to allow K.M. to be accompanied by her ABA therapist. Moreover, because the essence of the claim does not pertain to K.M.'s educational needs, the RA and ADA claims could be brought by a visitor or an employee of the school who had a similar need for medical

---

[1] Ultimately, the Court remanded the case to consider whether the history of the proceedings might suggest the Frys invoked the IDEA's dispute resolution process before bringing suit and whether those actions showed the gravamen of the complaint was indeed a denial of FAPE, thus necessitating further exhaustion. *Fry*, 137 S.Ct. at 758.

accommodation. The need for K.M.'s therapist at school is analogous to E.F.'s need for assistance from her service dog, Wonder. Under the *Fry* clues, the gravamen of K.M's claims under the ADA and the RA here do not center on the denial of a FAPE, but on access to the school facilities.

Finally, Plaintiffs also correctly assert that because the ALJ dismissed Plaintiffs' ADA and RA claims as not within OAH's jurisdiction, and that decision was not challenged by either party, the ALJ's decision is final and nothing is left to be exhausted with regard to those claims. 20 U.S.C. § 1415(i)(1)(A); *see also D.E. v. Central Dauphin Sch. Dist.*, 765 F.3d 260 (3d Cir. 2014) (un-appealed ALJ decision subject to enforcement suit in the district court as administrative remedies and procedures had been exhausted under the IDEA). Dismissal of RA and ADA claims by the ALJ for lack of jurisdiction is deemed to exhaust administrative remedies with respect to those claims. *D.C. v. Oakdale Joint Unified Sch. Dist.*, No. 1:11-cv-01112-AWI-DLB, 2012 WL 253224 at * 8 (E.D. Cal., Jan. 26, 2012). Here, the SAC alleges, and the ALJ's decision indicates, Plaintiffs' RA and ADA claims were dismissed for lack of jurisdiction, and the ultimate decision on the remaining issue was favorable to Plaintiffs, thus Plaintiffs did not appeal.

In sum, Plaintiffs' RA and ADA claims are not subject to the IDEA exhaustion requirements and, even to the extent of they are, such exhaustion has occurred.

**B.      Sufficiency of the Allegations of All Claims**

   **1.      RA and ADA Claims**

Defendants argue that even if Plaintiffs' RA and ADA claims are not dismissed for lack of exhaustion, they are nevertheless insufficiently pled. Specifically, Defendants argue Plaintiffs have failed to (1) plead facts showing K.M. was excluded from participation or otherwise discriminated against by reason of her disability; (2) make sufficient allegations of deliberate indifference; and (3) show K.M. received inadequate education compared to her non-disabled peers.

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or

activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Section 504 of the RA provides, in relevant part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . . " 29 U.S.C. § 794(a).

To state a claim for violation of Title II of the ADA, Plaintiffs must sufficiently allege (1) K.M. is a qualified individual with a disability; (2) K.M. was "either excluded from participation in or otherwise denied the benefits of a public entity's services, programs, or activities, or [were] otherwise discriminated against by the public entity"; and (3) "such exclusion, denial of benefits, or discrimination was by reason of" K.M's disability. *Weinreich v. L.A. County. Metro, Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997).

Similarly, a claim under Section 504 requires K.M. to show that (1) she is an individual with a disability; (2) she is otherwise qualified to receive the benefit; (3) she was "denied the benefits of the program solely by reason of" her disability; and (4) "the program receives federal financial assistance." *Duvall v. County of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001)*, as amended on denial of reh'g* (Oct. 11, 2001).

Furthermore, "[t]o recover monetary damages under Title II of the ADA or the RA, a plaintiff must prove intentional discrimination on the part of the defendant." *Id.* at 1138. This aspect is examined under a deliberate indifference standard, which "requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that likelihood." *Id.* at 1139.

Section 504 and Title II claims are routinely considered together because "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act." *Zukle v. Regents of the Univ. of Cal.*, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999).

For purposes of this motion, Defendants do not dispute that K.M. is a "qualified" individual with a "disability." The Court considers the challenged elements of Plaintiffs' RA and ADA claims

11

together below.

**(a) Discrimination Solely By Reason of K.M.'s Disability**

Plaintiffs assert the District violated Section 504 and the ADA in denying permission for K.M's ABA therapist to accompany her at school and failing to make reasonable accommodation. (SAC, ¶¶ 57-50.) Defendants argue Plaintiffs' claims do not sufficiently allege K.M. was denied access to school because of her disability or "solely by reason of" her disability. Defendants argue Plaintiff had been attending school until her parents kept her home because the District did not immediately honor their demand for ABA treatment at school. Moreover, Defendants contend, there were other reasons for the decision to refuse K.M.'s ABA therapy at school.

"Title II [] and § 504 both prohibit discrimination on the basis of disability." *Lovell v. Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002). In other words, the statutes prohibit discrimination *because* of disability, not merely inadequate treatment *for* a disability. *See Simmons v. Navajo Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010). To plead a failure to accommodate under the ADA or the RA, K.M. must allege facts showing that (1) she needed specific services (ABA therapy at school) to enjoy meaningful access to the benefits of a public education, (2) the District was on notice of the need for those disability-related services, but did not provide those services, and (3) the services were available as a reasonable accommodation. *Mark H. Hamamoto*, 620 F.3d 1090, 1097 (9th Cir. 2010).

At the pleading stage, K.M. has alleged facts showing the alleged discrimination was by reason of her disability as well as *solely* by reason of her disability.[3] K.M. alleges she required the services of an ABA therapist during school hours, as prescribed by her physician (SAC, ¶ 9, 11), to treat and manage her autism. (SAC, ¶¶ 5, 12, 13). K.M.'s mother requested that K.M.'s insurance-funded ABA therapist be permitted to accompany her during her school day so that her behavior could be monitored appropriately under the effective and necessary ABA treatment paradigm, but the District refused the

---

[3] The causal standard is lower for Title II claims than RA claims. *K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 1099 (9th Cir. 2013). Under either standard, the allegations are sufficient.

12

request. (SAC, ¶¶ 34-35.) The District's refusal was made despite its acknowledgment during administrative proceedings that such accommodation would be minor and "could be worked out." (SAC, ¶ 37, 41.) K.M. alleges this refusal was also made even though the District knew the ABA treatment for K.M would not be disruptive or fundamentally alter the school setting, and would be provided at no cost to the District by an ABA professional the District had contracted with in the past. (SAC, ¶ 36-38.) K.M. claims that as a result of this failure to accommodate K.M.'s ABA therapist, as prescribed by her treating pediatrician, K.M. was unable to attend school, and she was therefore denied the benefit from the curriculum and other opportunities provided to her nondisabled peers, and she has fallen behind her nondisabled peers both academically and developmentally. These allegations adequately fulfill all the prongs, as discussed in *Mark H. v. Hamamoto,* to sufficiently plead a reasonably accommodation claim under Section 504 of the RA and the ADA. 620 F.3d at 1097.

Whether there were other reasons offered as a basis to refuse accommodation, as the District maintains, that is a consideration on the merits of, among other things, whether the accommodation requested was reasonable and could be provided without fundamentally altering the school setting. Further, that K.M. had previously attended school without the ABA therapy does not undercut the claim. The allegation of K.M.'s medical prescription in 2016 gives rise to an inference that the therapy had *become* medically necessary at the time it was requested in 2016, even if it had not been previously determined to be medically necessary. When it became a medical necessity 40 hours per week, Plaintiffs contend, the District refused to make reasonable accommodation during school and thus forced Plaintiff to stay home to receive the needed therapy. These allegations are sufficient at the pleading stage to show K.M. was precluded from access to school solely on account of her disability.

### (b) Intentional Discrimination Allegations

Plaintiffs seek monetary damages under both the ADA and the RA and, therefore, must allege facts showing intentional discrimination by the District. *Ferguson v. City of Phoenix*, 157 F.3d 668, 674 (9th Cir. 1998). Defendants claim Plaintiffs' deliberate allegations are conclusory.

13

Intentional discrimination is shown by acts of deliberate indifference. *Duvall*, 260 F.3d at 1138. "Deliberate indifference requires both knowledge that a harm to a federally protected right is substantially likely, and a failure to act upon that [] likelihood." *Id.* A plaintiff can establish notice by showing that she "alerted the public entity to [her] need for accommodation," or that "the need for accommodation [was] obvious, or required by statute or regulation." *Id.* When an entity is on notice of the need for accommodation, it "is required to undertake a fact-specific investigation to determine what constitutes a reasonable accommodation." *Id.*

The SAC alleges facts showing deliberate indifference. K.M.'s mother alerted the District to the need for the ABA therapist to accompany K.M. at school as a medical accommodation for her autism, the District refused this request after a private meeting between two District personnel (SAC, ¶ 30), and the District denied the request knowing any accommodation would be minor, not disruptive to teachers, or fundamentally alter the classroom (SAC, ¶ 41). At the pleading stage, these facts show there was notice to the District of the need for a medical accommodation, and given the summary denial after only one alleged meeting between two District personnel, it can be inferred there was a lack of investigation to determine whether the accommodation requested was reasonable.[4]

### (c) Inadequate Education Compared to Peers

Defendants argue that pursing a FAPE claim under Section 504 of the RA requires a comparison between the services offered to disabled and non-disabled students, which Plaintiffs have failed to plead.

Plaintiffs contend they are not asserting a violation of Section 504's FAPE requirement. Rather, Plaintiffs allege K.M's right to a reasonable accommodation was denied, which impacted equal access to the educational facilities her non-disabled peers enjoy. In any event, Plaintiffs maintain, this

---

[4] The allegations of deliberate indifference are also sufficient to satisfy the pleading requirements for Plaintiffs' Unruh Civil Rights Act claim, which is the only element of that claim Defendants' challenge.

14

allegation of denial of access is a comparative allegation: K.M. was denied the access to public facilities that is provided to her non-disabled peers.

Defendants' citation to *Mark H. v. Lemahieu*, 513 F.3d 922, 933 (9th Cir. 2008) for the proposition that Plaintiffs must plead facts showing K.M. has been provided an inadequate education compared to non-disabled peers is inapposite. *Mark H.* involved 34 C.F.R. §104.33, which is not at issue here. Plaintiffs' claim centers on non-discriminatory access to educational facilities to the same degree as non-disabled peers, and is not inadequate for lack of comparative allegations as to educational services offered.

### (d) Ripeness

Defendants contend, in the alternative, that even if Plaintiffs' ADA and RA claims are sufficiently pled, they are not ripe and must be dismissed. Specifically, Defendants note the SAC alleges K.M. has a "right to receive [ABA] treatment at school under [Section ] 504 and [the] ADA." (SAC, ¶ 54.) Defendants maintain no such right has been established, and any violation of the right has not yet transpired as Plaintiffs' ABA therapist is presently with her at school based on an IEP decision. Defendants argue the claims are thus unripe, and the Court lacks jurisdiction to consider them.

The constitutional component of ripeness is a jurisdictional prerequisite. *Cal Pro-Life Council, Inc. v. Getman*, 328 F.3d 1088, 1093-94, n.2 (9th Cir. 2003) (noting that question of ripeness often "coincides squarely with standing's injury in fact prong") (internal citation and quotation marks omitted). To determine here whether K.M. suffered an injury in fact, there must be "an invasion of a legally protected interest which is (a) concrete and particularized; and (b) actual or imminent, not conjectural or hypothetical." *Laub v. United States Dep't of the Interior*, 342 F.3d 1080, 1085 (9th Cir. 2003); *see also Thomas v. Anchorage Equal Rights Commission*, 220 F.3d 1134, 1138-39 (9th Cir. 2000) (en banc).

Defendants' argument is not persuasive. Plaintiffs allege a failure-to-accommodate claim under the RA and the ADA and maintain K.M. was precluded from attending school for over a year because

15

her necessary medical treatment (the ABA therapy) was not accommodated by the District. This claim centers on K.M.'s right to be free from discrimination on account of her disability and to be provided reasonable accommodation to access public facilities. Because K.M. asserts she was prevented from attending school (i.e., accessing a public place) due to the District's failure to accommodate her necessary medical treatment, she has allegedly suffered an invasion of a legally protected interest. Although an IEP team has currently decided an ABA therapist is necessary to provide K.M. a FAPE, the deprivation of rights remains actual and imminent because Plaintiffs assert the need for therapy goes beyond K.M.'s educational needs under the IDEA – it centers on her access to the school itself. If the IEP team reconsiders its decision as to whether the ABA therapy is necessary to provide a FAPE, Plaintiffs still maintain the therapy is necessary to provide basic access to the school facilities. In other words, the decision to allow the ABA therapy under the IDEA does not protect Plaintiffs' rights to non-discriminatory access under the RA and the ADA. Additionally, Plaintiffs seek damages for harm already allegedly inflicted by precluding K.M.'s ability to attend school for a year. Plaintiffs' discrimination claims are ripe, and the Court is not deprived of jurisdiction on this basis.

### 2. **Plaintiffs' Section 1983 Claim is Dismissed**

Section 1983 "provides a cause of action for the 'deprivation of any rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 508 (1990). Section 1983, however, is not itself a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere. *Graham v. Connor*, 490 U.S. 386, 393-94 (1989). To plead a Section 1983 claim, two essential elements are required: (1) that a right secured by the Constitution or the laws of the United States was violated and (2) the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

Defendants argue Plaintiffs have failed to articulate what constitutional or statutory rights were violated, and contend Plaintiff cannot pin her Section 1983 claim on any of her other articulated claims

under the ADA or the RA. Plaintiffs do not directly address Defendants' argument in this regard, and cite no allegations in the complaint articulating what federal constitutional or statutory rights were violated beyond the District's failure to reasonably accommodate K.M.'s disability under the ADA and the RA. As Defendants correctly note, a plaintiff many not maintain a Section 1983 action in addition to an RA or ADA cause of action if the only deprivation alleged pertains to the rights created under those statutes. *Vinson v. Thomas*, 288 F.3d 1145, 1156 (9th Cir. 2002) (holding "a plaintiff cannot bring an action under 42 U.S.C. § 1983 against a State official in her individual capacity to vindicate rights created by Title II of the ADA or Section 504 of the Rehabilitation Act). Plaintiffs did not articulate what federal constitutional or statutory rights, beyond the rights created under the RA or the ADA, were violated by Defendants; thus, the Section 1983 claim is not viable.

Moreover, Plaintiffs' Section 1983 claim names Defendants Ferrell and Andreas-Bervel in their individual capacities, but there are no facts showing these Defendants acted outside the scope and duties of their employment with the District. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-90 (1949) (individual capacity suits involve actions of state agents which are outside the scope of their official job duties). For these reasons, Plaintiffs' Section 1983 claim fails.

### 3. **Plaintiffs' Section 1985 Claim is Dismissed**

Plaintiffs' Section 1985 claim alleges Defendants Ferrell and Andreas-Bervel, District personnel, conspired to deprive K.M. of her rights by "working in concert to deny her access to ABA treatment in her public school setting, based upon K.M.'s disability." (SAC, ¶ 79.) Defendants argue this claim must be dismissed because Section 1985 is not viable without a proper Section 1983 claim alleging a deprivation of federal constitutional or statutory rights, and the allegations against Ferrell and Andreas-Bervel are entirely conclusory.

Section 1985(3) prohibits conspiracies "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." 42 U.S.C. 1985(3). A conspiracy claim under Section 1985(3) is predicated on a cognizable Section 1983 that alleges a

17

deprivation of federal constitutional or statutory rights. *Caldeira v. County of Kauai*, 866 F.2d 1175, 1182 (9th Cir. 1989). As Plaintiffs' Section 1983 claim is not cognizable as pled, the Section 1985 conspiracy claim also fails.

Additionally, to properly allege a conspiracy claim under Section 1985, the plaintiff must state specific facts to support the existence of the claimed conspiracy. *Burns v. County of King*, 883 F.2d 819, 821 (9th Cir. 1989). Plaintiffs' Section 1985 allegations are limited to the following conclusory assertions: (1) Defendants Andreas-Bervel and Ferrell "conspired with intent to deprive Plaintiff of her rights by working in concert to deny her access to ABA treatment . . . . (SAC, ¶ 79) and (2) at a private meeting between Ferrell and Andreas-Bervel, "the two determined they would not allow K.M. to attend school with her ABA therapist . . . ." (SAC, ¶ 30.) These two statements fail to identify the period of the conspiracy, the object of the conspiracy, and the specific actions the alleged conspirators took to achieve that purpose. *See Lacey v. Maricopa*, 693 F.3d 896, 937 (9th Cir. 2012) (conspiracy allegations insufficient when plaintiff did not plead the scope of the conspiracy, what role the defendant had, or when and how the conspiracy operated). For these reasons, Plaintiffs' Section 1985 claim is dismissed.

**C.     Preliminary Injunction**

In their reply brief, Defendants argue Plaintiffs, in their opposition brief, are improperly asserting a right to a preliminary injunction. Although the Court does not interpret Plaintiffs' opposition as seeking a preliminary injunction, such a request in that format would be improper and insufficient. *See* Fed. R. Civ. P. 65(a); Local Rule 231(d). No request for a preliminary injunction is properly before the Court.

**D.     Amendment of the Complaint**

As set forth above, Plaintiffs' Section 1983 and 1985(3) claims are insufficiently pled. Plaintiffs may amend the complaint to the extent they are able to cure the deficiencies noted above. Should Plaintiffs elect to file an amended complaint, they shall do so within 14 days of the date of this order.

In any amended complaint, Plaintiffs may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.  Plaintiffs' failure to meet the 14-day deadline or a failure to cure the deficiencies identified in this order will result in a dismissal with prejudice of Plaintiffs' Section 1983 and 1985 claims.

## VI. <u>CONCLUSION AND ORDER</u>

For the reasons set forth above, IT IS HEREBY ORDERED that:

1. Defendants' motion to dismiss Plaintiffs' Section 1983 and Section 1985 is GRANTED;
2. Defendants' motion to dismiss Plaintiffs' Rehabilitation Act, ADA, and Unruh Civil Rights Act claims is DENIED.

IT IS SO ORDERED.

Dated:  **May 7, 2018**              /s/ Lawrence J. O'Neill
UNITED STATES CHIEF DISTRICT JUDGE