# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.M.,<br><br>　　　Plaintiff,<br><br>　　v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT, et al.,<br><br>　　　Defendants. | Case No.: 1:17-cv-01431 LJO JLT<br><br>ORDER WITHDRAWING FINDINGS AND RECOMMENDATION<br>(Doc. 89)<br><br>FINDINGS AND RECOMMENDATION TO GRANT IN PART THE MINOR'S MOTION TO ENFORCE THE SETTLEMENT AGREEMENT AND TO GRANT ATTORNEYS' FEES<br><br>(Doc. 58) |

In this litigation, K.M., through her guardian ad litem/mother, sought damages under the Individuals with Disabilities Education Act, the Americans with Disabilities Act, the Rehabilitation Act and the Unruh Act due to being denied a free appropriate public education. In addition to this action, the parties have been engaged in litigation in other cases including, Markham v. Tehachapi Unified School District, Case No.: 1:15-cv-01835 LJO JLT, Markham v. Tehachapi Unified School District, Case No.: 1:18-cv-00303 LJO JLT and Markham v. Tehachapi Unified School District v. Markham, Case No.: 1:16-cv-01942 LJO JLT, as well as an appeal in Markham v. Tehachapit Unified School District, Case No.: 17-15904. The parties resolved the actions, and the Court approved the minor's compromise, settling all of the action simultaneously. (Doc. 48)

Now before the Court is the child's motion to enforce the settlement agreement. The child contends the District has failed to provide many of the benefits of the settlement agreement including

1

not providing "the speech and language consultation support and resultant social skills "lunch bunch" opportunities, and staff training on word-prediction software, i.e., "Google Docs" . . ." (Doc. 58 at 6) Because it appears the District has failed to meet its obligations under the settlement agreement, the Court **RECOMMENDS** the motion be **GRANTED in PART** and **DENIED in PART**.

## I.     Factual and Procedural History

At the time this action was filed in October 2017, K. M. was a 9-year-old of average intelligence.[1]  (Doc. 2 at 2) However, K.M. has autism[2], which causes her "difficulty with verbal language skills and acquiring socially acceptable means for expressing protest, fear, frustration, anger, desire for something, sadness, or any other emotion. Though she now speaks, she is still "learning to communicate commensurate with her cognitive ability and chronological age." Id. To address these deficits, her pediatrician prescribed Applied Behavior Analysis, the cost of which was covered by the child's health insurance. Id. The student alleged that the defendants denied her these services while at school because the ABA therapist was not an employee or contracted with the school district. Id.

The student alleged that this refusal forced her to choose between receiving the services or attending school. (Doc. 2 at 3) Consequently, she was not able to attend school regularly. Id. at 10. She missed an entire year of school so she could obtain the ABA treatment. Id. The student alleged that by precluding her from receiving the treatment in the school setting, this detracted from the effectiveness of the therapy. Id. The inability to attend school also caused her to fall further behind in her educational pursuits. Id. at 11. In addition, the student asserts that when she was at school, she was subject to unsafe conditions and was provided inadequate supervision. (Doc. 44 at 4-5)

In April 2017, the administrative law judge issued a determination after holding a due process hearing.[3] (Doc. 2 at 12-13) The order required the school district to "'hold an [Individualized

---

[1] She is currently in the 7th grade.

[2] According to Amanda J. ex rel. Annette J. v. Clark Cty. Sch. Dist., 267 F.3d 877, 882–83 (9th Cir. 2001), "Autism is a developmental disorder of neurobiological origin that 'generally has lifelong effects on how children learn to be social beings, to take care of themselves, and to participate in the community. National Research Council, Educating Children With Autism 9 (Catherine Lord & James P. McGee, eds., National Academy Press 2001). [Footnote] The disorder is present from birth, or very early in development, and affects the child's ability to communicate ideas and feelings, to use her imagination, and to establish relationships with others. Id. No single behavior is characteristic of autism, and no single known cause is responsible for its onset. Id. Perhaps most distressingly, currently there is no cure. Id."

[3] The ALJ refused to consider the claims brought by the child under the ADA/Rehabilitation Act or the Unruh Act citing a lack of jurisdiction. (Doc. 2 at 12)

Educational Plan] meeting for the purpose of openly and honestly discussing and considering the ABA prescription and Mother's request that [Defendant] allow [K.M.'s] ABA insurance funded aide to accompany Student on campus. [Defendant] is ordered to provide training to its administrative and special education personnel regarding parental participation in the IEP process under the IDEA.'" Id. at 13. The resulting IEP permitted the student to have the ABA therapist at school beginning in August 2017 but only if the IEP continues to condone it and the right to these ongoing services at school could be terminated at any subsequent IEP meeting. Id.

During the litigation, the parties resolved the dispute. (Doc. 44-1) The settlement terms at issue here include:

> D. <u>Speech Services</u>: Speech services will be provided upon recommendation from Karen Schnee in her 2018 report.
>
> i. All goals submitted from Ms. Schnee will be included in KM.'s IEP, via an Administrative Amendment to K.M. 's IBP within 30 days of full execution of this Agreement;
>
> ii. Lunch Bunch (organized group games and activities open to all children) will be used to create opportunities for social skills training in a group for K.M., whose attendance will be facilitated by her TUSD aide, via an Administrative Amendment to KM.'s IEP within 30 days of full execution of this Agreement;
>
> iii. Provided that she agrees to do so, Ms. Schnee will be contracted with annually to review progress in achieving K.M. 's goals and assess whether services need to be adjusted, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement;
>
> iv. Speech services that are not provided one-on-one, will be provided in such a way that typically developing peers are involved. (During PE, Lunch Bunch, or other classes), via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement;
>
> E. <u>Assistive Technology</u>:  . . . Annually, all staff working with K.M. will be trained on how to use the software recommended by K.M.'s 2016 AT assessment, via an Administrative Amendment to K.M. 's IEP within 30 days of full execution of this Agreement;
>
> 9. <u>Independent Oversight</u>. For three years following full execution of this Agreement, Both parties agree to submit any disputes regarding the implementation of this Agreement, to [sic] for 30 days prior to pursuing further due process action. A Neutral shall be selected as follows: Plaintiffs and District shall each nominate a person. The nominees will agree upon and select a third party to serve as Neutral. If that fails, the parties agree to a Neutral selected by the Mediator. If the parties choose to utilize a mediator other than those provided free of charge by the Office of Administrative Hearings through a mediation-only mutual filing, TUSD shall be responsible for paying for the Neutral 's fees, if any.

(Doc. 44 at 10-14) One of the goals from Ms. Schnee's 2018 report included that "K.M. 'participate in

one 45 min social skills group or lunch bunch with 3-4 peers total weekly throughout the school year.'" (Doc. 58 at 9)

After the settlement occurred and pursuant to the terms of the agreement, Ms. Schnee "completed a consultation assessment" and determined that in addition to Lunch Bunch, K.M. needed to engage in social skills training in a group setting. (Doc. 58-15 at 1-3) Ms. Schnee concluded, "Social Skills training must be done by a Speech Therapist who has expertise in managing Social Skills Groups. It goes beyond being exposed to various social settings. This is a time for therapeutic intervention!" Id.

Due to disagreement about the implementation of the settlement agreement and after the Court's intervention (Doc. 54), the parties engaged in a second round of mediation. The mediator Retired Judge Stephen Larson, reported to the Court (Doc. 58-17) that during this mediation, the parties agreed to the following in relevant part:

> [¶¶]
> 3. K.M. will be provided "Lunch Bunch" options, referenced in paragraph 4D(ii) of the Settlement Agreement, on or before September 15.
>
> 4. K.M., and adult staff working with K.M., will be trained in Google Docs/predictive text on or before September 1, as further provided for in paragraph 4E of the Settlement Agreement.
>
> [¶¶]
>
> 7. A Neutral to resolve any further disputes, as described in paragraph 9 of the Settlement Agreement, will be appointed within 10 days of August 16. If the parties are unable to agree on a Neutral, each party will appoint someone and those two individuals will appoint a Neutral. If that is not possible, the parties agree that the Mediator will appoint a Neutral.[4]

## II.     The Court's Authority

The District argues the Court lacks jurisdiction to consider the motion to enforce the settlement agreement because of the limits placed on the Court's jurisdiction imposed by the Federal Arbitration Act. This argument is flatly disingenuous.

First, there is no arbitration agreement at issue[5]. Rather, as part of the settlement agreement,

---

[4] Unaddressed was the recourse for the parties if the mediation failed to resolve the dispute.

[5] Though the parties agreed to engage in binding arbitration related to the attorneys' fees incurred as of the date of the settlement agreement, there is no claim that this portion of the settlement agreement has been breached.

|   |   |
|---|---|
| 1 | the parties agreed that future disputes as to the implementation of the agreement would be submitted to |
| 2 | **mediation**.[6] (Doc. 58-2) Arbitration and mediation are very different processes. Binding arbitration is |
| 3 | a legal substitute for court proceedings and trials in court. It allows discovery and presentation of |
| 4 | evidence before a neutral who makes findings of fact and law. The outcome is determined by the |
| 5 | neutral and is binding on the parties. Mediation is an attempt for the parties to find common ground |
| 6 | and to work out their differences without resort to a trial in court. Lynn v. General Electric Co., 2005 |
| 7 | WL 701270, at *5 (D. Kan. Jan. 20, 2005). There is no neutral who decides the outcome; rather, |
| 8 | whether there is a resolution depends upon the willingness of the parties to compromise rather than the |
| 9 | imposition of an outcome by a neutral. Thus, the Court agrees with the analysis of Lynn at *6 that |
| 10 | "Congress never intended to encompass the mediation process . . . in the definition of arbitration as |
| 11 | used in the FAA. Accordingly, the Court concludes that under the facts presented, mediation does not |
| 12 | fall within the purview of 'arbitration' as that term is used in the FAA." See also Del Rey Fuel, LLC v. |
| 13 | Bellingham Marine Indus., Inc., 2012 WL 12941956, at *3, n. 18 (C.D. Cal. Apr. 10, 2012). The |
| 14 | District argues, without citation to any legal authority, that an agreement to mediate comes within the |
| 15 | FAA, and such an argument is absurd. |
| 16 | The Court also rejects the District's argument that it lacks jurisdiction to enforce the settlement |
| 17 | agreement because the settlement was not entered into according to the procedures of 20 U.S.C. § |
| 18 | 1415(e), (f). The cases cited by the District do not convince the Court otherwise. In Lara v. Lynwood |
| 19 | Unified School District, 2009 WL 2366454 (C.D. Cal. July 29, 2009), the parties settled the plaintiff's |
| 20 | due process complaint "outside of a mediation or resolution session." Id. at 1. When the district failed |
| 21 | to timely provide the services promised in the settlement, the plaintiff sued for enforcement of the |
| 22 | settlement agreement, breach of the settlement agreement and for fees and costs. Id. at 2. In |
| 23 | dismissing the complaint for lack of subject matter jurisdiction, the court noted, "The Court has |
| 24 | subject matter jurisdiction over this action under 20 U.S.C. § 1415(e), (f). Pursuant to those |
| 25 | provisions, if a "resolution is reached to resolve the [due process] complaint through the mediation |
| 26 |   |
| 27 | [6] In truth, the settlement agreement does not indicate the parties would submit to mediation; it only implies this. The settlement agreement indicates the "parties agree to submit any disputes regarding the implementation of this Agreement, |
| 28 | to for 30 days prior to pursuing further due process action." The pleadings filed in this action and the position of the parties agree that they would "submit any disputes" to mediation. |

process ... [the written agreement] is enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(e)(2)(F). If a settlement is reached to resolve a due process complaint at a resolution session, the written agreement is "enforceable in any State court of competent jurisdiction or in a district court of the United States." 20 U.S.C. § 1415(f)(l)(B) (iii)." Because the settlement was not achieved in the mediation process provided for in 20 U.S.C. § 1415(f)(1)(B), the court determined it lack jurisdiction over the matter which was, otherwise, a mere contract dispute.

      The parties to this case engaged in mediation to settle this lawsuit alleging violations of the Americans with Disabilities Act, the Rehabilitation Act, California's Unruh Act and for violations of the Constitution. (Doc. 1) Though the settlement agreement notes that the parties were settling four due process complaints (Doc. 58-2 at 2), the settlement also resolved three others federal civil cases and an appeal: Markham v. Tehachapi Unified School District, Case No. 1:15-cv-01835 LJO JLT; Markham v. Tehachapi Unified School District, Case No. 1:18-cv-00303 LJO JLT; Tehachapi Unified School District v. K.M., Case No. 1:16-cv-01942 LJO JLT; Markham v. Tehachapi Unified School District, Case No. 17-15904.  Thus, the Court is unconvinced that the fact that the settlement agreement also resolved the due process complaints, that this divests the Court of jurisdiction. Notably, the Court is limiting itself only to this litigation and makes no effort to involve itself in the due process complaint and makes no comment about the effect of this motion on that complaint. Consequently, the Court concludes that jurisdictional limitations imposed by 20 U.S.C. § 1415(f)(1)(B) do not apply here. Notably, in all of the cases cited by the District for the proposition that § 1415(f) precludes jurisdiction here, L.K. v. Burlingame School District[7], 2008 WL 2563155, (N.D. Cal. June 23, 2008), Traverse Bay Area Intermediate School District v. Mich. Dept. of Educ., 2007 WL 2219352 at *6-*8 (W.D.Mich. July 27, 2007)  or M.J. ex rel. G.J. v. Clovis Unified School District, 2007 WL 1033444, at *4 (E.D. Cal. Apr. 3, 2007), the court was being called upon to enforce a settlement achieved during the due process complaint action and none involved original civil actions

---

[7] Moreover, though L.K. acknowledged the jurisdictional limit imposed by 20 U.S.C. 1415(f) in footnote 8, its holding was limited to whether the plaintiff had properly exhausted administrative process provided by the IDEA before filing the lawsuit.

6

that were unrelated to the due process complaint. Thus, the Court finds these cases do not apply to the facts and causes of action of this case and are unhelpful to the Court's analysis.

The Court is vested with the authority to enforce settlement agreements if such jurisdiction is reserved in it. Not only did the parties specifically request the Court retain jurisdiction[8] (Doc. 55 at 2), but the order closing the case based upon this stipulation, affirmatively maintained jurisdiction to enforce the settlement (Doc. 56 at 2). The Ninth Circuit has endorsed this rationale in K.C. ex rel. Erica C. v. Torlakson, 762 F.3d 963, 967 (9th Cir. 2014) when it noted,

> . . . courts have ancillary jurisdiction to enforce a settlement agreement only "if the parties' obligation to comply with the terms of the settlement agreement ha[s] been made part of the order of dismissal—either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order." Kokkonen, 511 U.S. at 381, 114 S.Ct. 1673.
>
> In the event the settlement agreement is breached, the court would have ancillary jurisdiction that arises from breach of the court's dismissal order. Id.; see also Alvarado v. Table Mountain Rancheria, 509 F.3d 1008, 1017 (9th Cir.2007) (stating that where "the dismissal order incorporates the settlement terms, or the court has retained jurisdiction over the settlement contract.... the party seeking enforcement of the settlement agreement must allege a violation of the settlement agreement in order to establish ancillary jurisdiction") (citing Kokkonen, 511 U.S. at 381–82, 114 S.Ct. 1673, and O'Connor v. Colvin, 70 F.3d 530, 532 (9th Cir.1995)).

K.M. has alleged in her motion to enforce the settlement agreement that the District has breached the settlement agreement (See Doc. 58). This is sufficient to invoke the Court's ancillary jurisdiction.

### III. Relevant Settlement Terms

The child complains about several failings on the District's part: 1.) the failure to provide a Lunch Bunch option that meets the goals of the enhancing the child's social skills and speech therapy; 2.) the failure to train each of the teachers who have contact with the child in the relevant software; and, 3.) payment for past services performed by Ms. Schnee and extending a contract to Ms. Schnee for a relevant amount for future work. Consequently, in addition to seeking an order requiring compliance with the settlement agreement, the child seeks fees and costs in filing this motion and coercive sanctions.

---

[8] If the District believed that the settlement of the due process complaints deprived the Court of jurisdiction to enforce the settlement despite that it settled four civil cases and a civil appeal, the Court is stymied by the District's earlier position asking the Court to retain to enforce the settlement agreement.

**A.     Lunch Bunch**

The parties agreed that the child would engage in Lunch Bunch. The parties agreed that Lunch Bunch constituted "organized group games and activities." (Doc. 58-2 at 2) They agreed also that Lunch Bunch "will be used to create opportunities for social skills training in a group for K.M" and "Speech services that are not provided one-on-one, will be provided in such a way that typically developing peers are involved . (During PE, Lunch Bunch, or other classes). Id. at 2-3. Notably, the parties intended that the group games would be "organized" and open to all children.

Though the District contends that its only obligation was to provide the child a list of the Lunch Bunch options, this is contrary to the face of the settlement agreement.  Indeed, every child at the school is entitled to participate in Lunch Bunch.  If simply alerting the child to her entitlement to participate were all that was required, the child would have received no benefit from this settlement term.

On the other hand, the child's mother and Ms. Schnee have observed that the child has been offered two Lunch Bunch groups: a religious based group at which a religious message is preached to the attendees ("Christ Alive") (Doc. 58-16 at 6-7) and sign language club. There is no evidence that either of these groups provide the "social skills training" or "speech services" that the parties intended K.M. to receive.  The Court has been given no evidence that the other two Lunch Bunch groups, chess club or student government, would provide the social skills training or speech services the parties agreed K.M. would receive or that she was eligible to attend student government. Thus, the Court concludes that the Lunch Bunch activities offered by the District do not and did not comply with the terms of the settlement agreement.

The Court agrees that the discussion of the social skills training needed by K.M. that Ms. Schnee outlines in her 2019 report (Doc. 58-15 at 1-3), goes well beyond that outlined in the settlement agreement related to Lunch Bunch activities. However, the parties also agreed that "Ms. Schnee will be contracted with annually to review progress in achieving K.M.'s goals and assess whether services need to be adjusted, via an Administrative Amendment to K.M.'s IEP." Id. at 2. Thus, it appears the parties anticipated that the services would be adjusted, and the District offers no explanation why Ms. Schnee's recommendations for creation of a new Lunch Bunch-type activity

8

should not have been included in her updated IEP.

### B. Schnee billing and contract

The District admits that it has failed to pay Ms. Schnee for all of the work completed by her. Mr. Ferrell's declaration fails to discuss why this has not occurred, though an email he sent to Ms. Schnee indicates that he believes she discussed her recommendation outside of the IEP. (Doc. 58-20 at 6) Seemingly, because she was paid to attend the IEP meeting, he believed she should not be paid for her earlier discussion of the recommendations. Id. Exactly why this would preclude payment is not explained. Notably, Ms. Schnee spoke to the child's mother, her speech therapist, and her teachers during her 2019 evaluation, to determine information relevant to that investigation (Doc. 58-15 at 4-7). It is not clear whether he thinks none of these conversations are compensable or only some of them are not. Also, he seems to suggest that Ms. Schnee should not be compensated for investigating a social skills programming without his authorization, but his declaration contradicts indicates Ms. Schnee took this action upon his request.[9] (Compare Doc. 65 at 3 with Doc. 58-20 at 6). Nevertheless, it appears that as of September 26, 2019, he had authorized all but $450 of work. The Court disagrees that the ambiguous email sent by Mr. Ferrell supports the denial of this payment to Ms. Schnee.

The District admits that it unilaterally capped the contract offered to Ms. Schnee for the 2019/2020 academic year at $1,500. There is no explanation for this except for the District's opinion that the work needed in 2020 is minimal. Counsel has failed to demonstrate her expertise to opine on this topic. In addition, Ms. Schnee called the cap "ridiculously low" and her prior billings amounted to about $3,500. Indeed, the settlement agreement did not anticipate any cap on the amount of the contract. Moreover, there is no evidence that the child received the services that would otherwise have been provided by Ms. Schnee in the 2019/2020 academic year or that the District has provided a contract to anyone to provide the Schnee services in this current 2020/2021 academic year. Thus, the Court concludes that the District has failed to comply with the settlement agreement to offer Ms. Schnee or other provider, a contract contemplated by the settlement.

///

---

[9] In addition, at the hearing, the District's attorney stated that Mr. Ferrell authorized Ms. Schnee to conduct this research.

### C. Google Docs

The District admits it has trained only two individuals who work with K.M. (Doc. 63 at 13). At the hearing, the District's attorney admitted there are other staff members who work with the child who have not been trained. The Court's role here is not to question the wisdom of the agreement that "all staff" would be trained; its role is to determine whether it has occurred. It has not.

### D. Fee Award

The Settlement agreement sets forth how the attorneys' fees accrued at the time of the settlement would be determined. (Doc. 58-2 at 4) It also expressly recognized that the parties "shall bear all [other] fees . . ." The agreement does not address fees incurred in the future.

#### i. The settlement agreement does not preclude fees under the ADA

The District argues that the agreement provides that all fees that were not specifically addressed in the agreement are not recoverable. (Doc. 87) The plaintiff asserts that the provision requiring other fees to be borne by the parties relates only to fees existing at the time of the settlement agreement. Thus, because this paragraph of the contract is ambiguous and the parties offer differing interpretations of the paragraph, it appears there was no meeting of the minds on this topic.[10] However, neither party asserts that this term was material to the settlement contract. Thus, though this term fails for lack of ascent, the contract is made up of the material terms upon which the parties agree.[11]

---

[10] Defense counsel admits that this is not the first time the parties have disagreed whether the settlement agreement allows for fees for post-settlement enforcement activities (Doc. 90-1), further cementing that the parties lacked a meeting of the minds on this topic when the settlement agreement was formed—assuming either party intended to preclude attorney's fees for post-settlement enforcement activities. Notably, the current defense counsel was not a participant at the mediation at which the parties settled the case (Doc. 44-1 at 7).

[11] Moreover, the Court finds the District's position is inconsistent with the balance of the agreement. First, the District has taken the position that if mediation fails to resolve a dispute over the implementation of the terms of the settlement agreement, the aggrieved party must resort to a new due process complaint. Though the Court disagrees with this position—due in large part to the fact that the parties expressly requested the Court to retain jurisdiction to enforce the settlement agreement and the fact that the agreement does not indicate this—if it were correct, clearly, the plaintiff could obtain fees is she prevailed in a new due process action.

Second, the District's position would thwart the plaintiff's right to seek recourse in this Court because if the parents must bear their own fees, doing so would be cost-prohibitive. Indeed, counsel seek about $50,000 in fees that they claim stem from the District's breach of the settlement agreement. (Doc. 84-1 at 8-9; Doc. 84-2) The Court agrees with the plaintiff that there is no indication in the settlement agreement that, though affirmatively seeking the Court's jurisdiction, the plaintiffs intended to make it impossible for themselves to avail themselves of it by bearing their own fees when doing so. Finally, the District's position is counter to the balance of the settlement agreement, which anticipates only that the

10

Having determined the fee award is not waived by the settlement agreement, the Court turns to its authority to award fees in this enforcement action. The Court finds helpful the analysis of K.C. ex rel. Erica C. v. Torlakson, 762 F.3d at 968-971. In K.C., the Court held that the court had ancillary jurisdiction to determine an attorney fee award for post-settlement monitoring, even where the settlement agreement did not provide for it, because the Americans With Disabilities Act—under which K.C. sued—provides for such a fee award. In K.C., the parties agreed that the court would retain jurisdiction to enforce the settlement agreement for a limited period. Id. at 965-966. Two years after the period of the court's retained jurisdiction expired, the plaintiffs' attorneys filed a motion for fees incurred as a result of ongoing monitoring of the implementation of the settlement agreement. Id. at 966.

On appeal, the Ninth Circuit held that no matter the expiration of the court's retained jurisdiction, the court had ancillary jurisdiction to determine the fee award. K.C. ex rel. Erica C. v. Torlakson, at 968 ["There is no debate that a federal court properly may exercise ancillary jurisdiction 'over attorney fee disputes collateral to the underlying litigation.'" (citations omitted).] The Court determined also that the fact that the trial court's jurisdiction over the settlement agreement had expired was irrelevant to the question. Id. In holding that the court's ancillary jurisdiction over the fee dispute is "inherent and broader than its ancillary jurisdiction to enforce a settlement agreement," the Court agreed that, "even 'years after the entry of a judgment on the merits' a federal court could consider an award of counsel fees'" Id, quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 395-396 (1990). Finally, the Ninth Circuit agreed that the fact that the ADA allows for attorneys' fees to be awarded to the prevailing party, the fee motion was properly filed, and the trial court had jurisdiction to decide the motion. Id. at 969-971.

There can be little dispute that the plaintiff was the "prevailing party" given the value of the settlement to the child. (Doc. 47 at 5-6, 7). It provided the child approximately $650,000 worth of educational services which were "incalculable" in terms of improving her educational opportunities (Id.) and as much as about $825,000 in fees. (Doc. 58-2 at 1) Notably, the District has never taken the

---

District would be out-of-pocket in the event of a breach, as demonstrated by the agreement that it would bear the cost of mediation services if either party disagreed with the use of the free mediation services provided by the OAH.

11

position that the plaintiff should not be entitled to "prevailing party" status, even though the settlement agreement admitted no liability. Thus, the Court finds that the plaintiff is entitled to an award of fees.

### ii. Relevant billing records

The Court must first determine a reasonable fee by multiplying "the number of hours reasonably expended on the litigation" by "a reasonable hourly rate." Id. "The district court also should exclude from this initial fee calculation hours that were not reasonably expended." Id. at 434 (internal quotation marks omitted). After calculating this lodestar amount, the Court can further adjust the lodestar calculation by considering the following nonexhaustive factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1975), abrogated on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992); see also Chalmers v. City of Los Angeles, 796 F.2d 1205, 1211 (9th Cir. 1986).

"[T]he fee applicant bears the burden of establishing entitlement to an award and documenting the appropriate hours expended and hourly rates." Hensley, 461 U.S. at 437. "The party opposing the fee application has a burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits." Camacho v. Bridgeport Fin., Inc., 523 F.3d 973, 982 (9th Cir. 2008).

The District asserts that even if fees can be awarded, fees should be reduced only to those related to the motion itself and not to acts to enforce the settlement agreement or to the mediation the parties engaged in to attempt to resolve the motion. The Court agrees in part.

In the motion, the plaintiff seeks "Attorneys' fees and costs incurred in enforcing the settlement agreement through litigation." (Doc. 58 at 23) Thus, the Court takes this to mean, not that the plaintiff is seeking fees related to general oversight of the settlement or attempts to obtain compliance with the settlement agreement before resorting to filing the motion, but only as to those

fees that relate to the current motion. Review of the billing records demonstrate that counsel began formulating the current motion in February 2020. Thus, the Court does not award fees before February 13, 2020.

The Court disagrees that fees associated with the mediation should not be awarded. The evidence demonstrates that the plaintiff repeatedly sought mediation to address the disagreements over whether the District was complying with the settlement. The District took the position that it could unilaterally refuse to participate in mediation, and, consequently, the plaintiff was forced to file the motion now before the Court. The fact that the Court required the District to engage in the mediation before it would consider the merits of the motion, clearly demonstrates that the mediation was caused by the motion. Moreover, the Court rejects the position that the plaintiff could not seek a fee award related to a mediation, absent the motion to compel as K.C. ex rel. Erica C. v. Torlakson, 762 F.3d at 968-971 demonstrates.

### iii. Fee Award

The District offers no other objection to the billing records submitted by counsel. If a fee request is opposed, "[g]eneral arguments that fees claimed are excessive, duplicative, or unrelated do not suffice." Etcheson v. FCA US LLC, 30 Cal. App. 5th 831, 848 (2018) (quoting Premier Med. Mgmt. Sys. v. Cal. Ins. Guarantee Assoc., 163 Cal. App. 4th 550, 564 (2008)). Instead, the opposing party must demonstrate that the hours claimed are duplicative or excessive. Premier Med. Mgmt. Sys., 163 Cal. App. 4th at 562, 564; see also First American Title Ins. Co v. Spanish Inn, Inc., 239 Cal. App. 4th 598, 606 (2015) ("Although defendants argued to the trial court that the 'amount claimed for attorneys fees is not reasonable,' defendants did not respond to First American's evidence with evidence of their own, as required."); Gorman v. Tassajara Dev. Corp., 178 Cal. App. 4th 44, 101 (2009) ("The party opposing the fee award can be expected to identify the particular charges it considers objectionable."). The court has reviewed the billing statements at issue here and concludes that the time billed was reasonably incurred in enforcement of the settlement. As noted above, the Court has not been directed to any further instances of excessive, redundant or unnecessary billing and the Court does not find any. Rather, it appears the billing records were carefully culled so that fees for any possibly questionable entries were not sought.

A fee applicant bears a burden to establish that the requested rates are commensurate "with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum v. Stenson, 465 U.S. 886, 895 n.11. The applicant meets this burden by "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Id.; see also Chaudhry v. City of Los Angeles, 751 F.3d 1096, 1110-11 (9th Cir. 2014) ("Affidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community . . . are satisfactory evidence of the prevailing market rate.")

In general, the relevant community for purposes of calculating attorneys fees "is the forum in which the district court sits." Davis v. Mason County, 927 F.2d 1473, 1488 (9th Cir. 1991). Thus, when a case is filed in the Fresno Division of the Eastern District of California, "[t]he Eastern District of California, Fresno Division, is the appropriate forum to establish the lodestar hourly rate . . ." See Jadwin v. County of Kern, 767 F.Supp.2d 1069, 1129 (E.D. Cal. 2011). However, the Court may apply "rates from outside the forum... 'if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case.'" Barjon v. Dalton, 132 F.3d 496 (9th Cir. 1997) (quoting Gates v. Deukmejian, 987 F.2d 1392, 1405 (9th Cir. 1992)).

This Court has found previously that there are no attorneys handling special education litigation in Kern County for the families. See Wright v. Tehachapi Unified Sch. Dist., 2017 WL 3334015 (E.D. Cal. Aug. 4, 2017) at *5, aff'd, 743 F. App'x 125 (9th Cir. 2018); Tehachapi Unified Sch. Dist. v. K.M., by & Through Markham, 2019 WL 331153, at *4 (E.D. Cal. Jan. 25, 2019) (finding a "scarcity of special education lawyers in the Eastern District of California").

Ms. Marcus requests an hourly rate of $500, asserting she has "over 20 years of experience, specifically in special education, which has spanned numerous administrative hearings, District and State Court proceedings, and multiple cases before the Ninth Circuit Court of Appeals. TUSD has been ordered to pay [her] fees, at the hourly rate of $500.00 per hour, twice for work performed in 2018, by the Ninth Circuit Court of Appeals. [A.W. v. TUSD, ca9-2017-16970 (January 7, 2019);

R.Q. v. TUSD, ca9-2017-16210 (January 8, 2019)]." (Doc. 84 at 7)

Mr. Dudukigian seeks an hourly rate of $475 and asserts that he has practiced for 20 years and has has been "practicing special education law for approximately 13 years." (Doc. 84-1 at 2, 5). He reports that he has been "continuously practicing special education law since 2014, and in California since March 2017." Id. at 5. Mr. Dudukigian notes that when the fees were determined after arbitration two years ago, he was awarded $450 per hour and since this time, the District has agreed to reimburse him this same hourly rate after succeeding in two other due process hearings. Id. at 6.

Given the lack of special education attorneys in this area, the fact that this Court and the Ninth Circuit has found $500 to be a reasonable rate for Ms. Marcus and based upon the complexity of the issues raised in this case, the Court finds that the hourly rate of $500 for Ms. Marcus and $475 for Mr. Dudukigian is reasonable. Thus, the Court recommends that fees should be awarded as follows:

| | | |
|---|---|---|
| a. | Andrea Marcus | $23,510 |
| b. | Goriune Dudukgian | $11,485 |
| Total | | $34,995 |

The Court further recommends that the District be required to pay the fee award within 30 days.

### E.     Contempt

The plaintiff seeks to have the Court order the district to comply with the settlement agreement. To demonstrate a finding of civil contempt is appropriate, the moving party bears the initial "burden of showing by clear and convincing evidence that the contemnors violated a specific and definite order of the court." Fed. Trade Comm'n v. Affordable Media, LLC, 179 F.3d 1228, 1239 (9th Cir. 1999)). Once the moving party does so, the contemnor must "demonstrate why [he] was unable to comply." Id. "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." Go-Video, Inc. v. Motion Picture Ass'n of America, 10 F.3d 693, 695 (9th Cir. 1993). In general, proceedings for civil contempt "are instituted by the issuance of an Order to Show Cause . . . why a contempt citation should not issue and a notice of a date for the hearing." Alcalde v. NAC Real Estate Invs. & Assign., Inc., 580 F. Supp. 2d 969, 971 (C.D. Cal. 2008). The plaintiff never requested the Court issue the order to show cause.

Though the Court finds that the District has not met its obligations under the settlement

agreement, that agreement does not constitute an order of the Court. See <u>Falstaff Brewing Corp. v. Miller Brewing Co.</u>, 702 F.2d 770, 778 (9th Cir. 1983) ("Civil contempt is characterized by the court's desire to compel obedience to a court order . . . or to compensate the contemnor's adversary for the injuries with result from the noncompliance"). Also, the members of the school board for the District were not ordered to appear and show cause why they should not be held in contempt. Thus, at this time, the Court does not find that contempt sanctions are appropriate.

**IV.    Order**

The findings and recommendations issued on October 5, 2020 (Doc. 89) are withdrawn.

**V.     Findings and Recommendations**

Based upon the foregoing, the Court **RECOMMENDS** that the Court has failed to comply with the settlement agreement in the following ways:

1. Failing to offer a Lunch Bunch activity that was "used to create opportunities for social skills training in a group for K.M" and by failing to incorporate Ms. Schnees's recommended amendments to the Lunch Bunch activity and for "speech services" set forth in her 2019 report;

2. Failing to train "all staff working with" the child in the chosen Google Docs app;

3. Failing to pay for the services of Ms. Schnee for the 2018/2019 academic year and failing to offer her a contract for the 2019/2020 and 2020/2021 academic years.

Consequently, the Court further **RECOMMENDS** the Court order the District:

1. Within ten days of the restart of Lunch Bunch activities during the mote learning period or within ten days of the return to in-person learning, to offer the child a Lunch Bunch activity that will be "used to create opportunities for social skills training in a group for K.M" and to offer speech services as described in Ms. Schnees's set forth in her 2019 report[12];

2. Within ten days to train "all staff working with" the child in the chosen Google Docs app and before any newly assigned staff member begins work with the child;

3. Within ten days to pay the outstanding amounts owed to Ms. Schnee, in the amount of $450 for the 2018/2019 academic year and to offer her or a similar provider a contract for the

---

[12] It appears Ms. Schnee intends the child to receive social skills training and speech services in one, organized activity — Lunch Bunch — rather than in two separate activities.

16

2020/2021 academic year without a contract "cap" unilaterally set by the District. The District may work with Ms. Schnee or the substitute provider[13] to establish a cap, provided Ms. Schnee/the alternate provider agrees that the work can be completed within this amount;

    4.    Within 30 days, pay attorneys' fees to Andrea Marcus in the amount of $23,510 and to Goriune Dudukgian in the amount of $11,485.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within fourteen days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **October 20, 2020**               **/s/ Jennifer L. Thurston**
                                                     UNITED STATES MAGISTRATE JUDGE

---

[13] Because the District failed to offer Ms. Schnee the contract envisioned by the settlement agreement and to pay her the amount owed, the Court recognizes Ms. Schnee may not be willing to again contract with the District. The Court imagines that a replacement provider may cost more, because he/she will need to become familiar with the child and the circumstances. Even Ms. Schnee will likely need to spend extra time to determine and evaluate the child's current status.

17