UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| K.M.,<br><br>    Plaintiff,<br><br>    v.<br><br>TEHACHAPI UNIFIED SCHOOL DISTRICT, et al.,<br><br>    Defendants. | No. 1:17-cv-01431 NONE JLT<br><br>ORDER ADOPTING FINDINGS AND RECOMMENDATIONS AND AWARDING ADDITIONAL FEES FOR RESPONDING TO OBJECTIONS TO FINDINGS AND RECOMMENDATIONS<br><br>(Doc. Nos. 58, 91) |

**BACKGROUND**

In this case, K.M., through her guardian ad litem, sought damages under the Individuals with Disabilities in Education Act ("IDEA"), the Americans with Disabilities Act ("ADA"), the Rehabilitation Act, and California's Unruh Civil Rights Act. (Doc. No. 14.) On January 31, 2019, plaintiff filed a motion seeking approval of a minor's compromise. (Doc. No. 44.) The assigned magistrate judge recommended approval of that motion (Doc. No. 47), and the previously-assigned district judge adopted that recommendation on February 28, 2019 (Doc. No. 48). When the parties thereafter failed to timely submit dismissal documents, the assigned magistrate judge issued orders to show cause regarding sanctions, which brought further disputes to light. (Doc. Nos. 49–54.) In a July 8, 2019 order, the assigned magistrate judge set new deadlines for the parties to file stipulated dismissals of this case and related actions and ordered the parties to set up mediation pursuant to their existing written settlement agreement to resolve outstanding disputes over implementation of their

1

1   settlement agreement. (Doc. No. 54.) The magistrate judge specifically indicated that "the stipulated
2   dismissals should request the Court to retain jurisdiction to enforce the settlement if any party wishes it
3   to do so." (*Id*. at 2.) The requisite dismissal order, which was submitted on July 9, 2019 and approved
4   the next day, included language requesting that the court retain jurisdiction to enforce the settlement.
5   (Doc. Nos. 55, 56.) Meanwhile, the parties engaged in another round of mediation before Retired
6   United States Magistrate and District Judge Stephen Larson, which resulted in additional agreements,
7   some elements of which are detailed below to the extent relevant. (Doc. No. 54.)

8         On April 27, 2020, plaintiff filed a motion to compel/enforce compliance with the minor's
9   compromise. (Doc. No. 58.) Initially, the assigned magistrate judge ordered the parties to another
10  mediation session pursuant to the terms of the settlement agreement. (Doc. No. 72.) On July 10, 2020,
11  plaintiff informed the court that the mediation had been unsuccessful and renewed the motion to
12  enforce. (Doc. No. 74.) The court referred the motion to the assigned magistrate judge pursuant to 28
13  U.S.C. § 636(b)(1)(B) and Local Rule 302. (Doc. No. 79.) An initial set of findings and
14  recommendations issued on October 5, 2020, (Doc. No. 89), and Defendant Tehachapi Unified School
15  District ("District" or "defendant") filed objections to those findings and recommendations (Doc. No.
16  90). Thereafter, on October 20, 2020, the magistrate judge withdrew the original findings and
17  recommendations and issued new ones, recommending that the motion to enforce the settlement
18  agreement be granted in part and that plaintiff's request for attorney's fees in connection with the
19  motion be granted. (Doc. No. 91.) Defendant filed objections thereto (Doc. No. 92), plaintiff
20  responded (Doc. No. 93), and defendant replied (Doc. No. 94).

21                                        **ANALYSIS**

22        In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C), this court conducted a *de novo*
23  review of the case. Having carefully reviewed the file, the court finds the findings and
24  recommendations are supported by the record and proper analysis. The court addresses herein only
25  those aspects of the findings and recommendations to which defendant has objected. The magistrate
26  judge reasoned that defendant was in breach of several aspects of the parties' settlement agreement,
27  including: (1) a term calling for defendant to contract with Karen Schnee to provide K.M. with certain
28  /////

services; and (2) a term related to the creation of opportunities for K.M. to obtain "social skills training" through "Lunch Bunch (organized group games and activities open to all children)."

**A.   Objections To Recommended Enforcement of Term Requiring Contract for Services**

The first issue concerns the following terms of the parties' settlement agreement.

> [4]D.   <u>Speech Services</u>: Speech services will be provided upon recommendation from Karen Schnee in her 2018 report.
>
> ***
>
> iii.   Provided that she agrees to do so, Ms. Schnee will be contracted with annually to review progress in achieving K.M.'s goals and assess whether services need to be adjusted, via an Administrative Amendment to K.M.'s IEP within 30 days of full execution of this Agreement;
>
> ***
>
> H.   <u>Discontinued Service Provider</u>:  Should any service provider providing services under [various sections of the agreement including the "Speech Services" section quoted above] elect to discontinue their contract to provide services under this agreement then the parties shall request that the outgoing service provider provide a list of not less than three similarly qualified professionals competent to act as a replacement. The parties shall attempt to mutually agree to a replacement from the list provided.  In the event of an impasse, such that the parties are unable to mutually agree to a provider specified on the replacement list, then the parties agree that TUSD will attempt to contract with a replacement provider specified on the list who has the office location closest to TUSD.

(Doc. No. 44-1 at 2–3.)

The magistrate judge found that defendants "failed to comply with the settlement agreement to offer Ms. Schnee or [an]other provider, a contract contemplated by the settlement." (Doc. No. 91 at 9.) Specifically, the findings and recommendations indicate that defendant unilaterally capped the contract offered to Ms. Schnee for the 2019/20 academic year at $1,500—a fee Ms. Schnee dubbed "ridiculously low"—without sufficient explanation. (*Id*.) Moreover, as the magistrate judge pointed out, the record does not demonstrate that defendant has contracted with any other provider to replace

/////

/////

3

Ms. Schnee. (*Id.*) Defendant failed to address this issue in its opposition or reply.[1] The court agrees with the magistrate judge's conclusion. Even accepting defendant's explanations for the $1,500 fee offered to Ms. Schnee, defendant offers no explanation for its failure to contract with another provider. The magistrate judge's recommendation will therefore be adopted as to this issue.

**B.      Objections Regarding Recommended Enforcement of "Lunch Bunch" Term**

Defendant directly objects to the magistrate judge's finding that it was also in breach of the so-called "Lunch Bunch" term of the settlement agreement, which provides in relevant part:

> [4]D.   <u>Speech Services</u>: Speech services will be provided upon recommendation from Karen Schnee in her 2018 report.
>
> ***
>
> ii.    Lunch Bunch (organized group games and activities open to all children) will be used to create opportunities for social skills training in a group for K.M., whose attendance will be facilitated by her TUSD aide, via an Administrative Amendment to K.M.'s [Individualized Education Plan] within 30 days of full execution of this Agreement;

(Doc. No. 44-1 at 2–3.) After the second round of mediation with Judge Larson, the parties further agreed that K.M. "will be provided 'Lunch Bunch' options, referenced in paragraph 4D(ii) of the Settlement Agreement, on or before September 15." (Doc. No. 58-17.)

In its objections, defendant reiterates its contention that its only obligation under this term of the parties' settlement is to provide the child a list of existing Lunch Bunch options available at the school. (*See* Doc. No. 94.) As the magistrate judge persuasively reasoned, "[i]f simply alerting the child to her entitlement to participate were all that was required, the child would have received no benefit from this

---

[1] The magistrate judge separately discussed the fact that, at least as of the date the findings and recommendations issued, Ms. Schnee had not been paid for all the work she had previously performed. (Doc. No. 91 at 9.) Defendant did not address this finding at all in its initial objections (Doc. No. 92), which, in turn, appears to have caused plaintiff to assume defendant had conceded this point (*see* Doc. No. 93). In reply, however, defendant indicated that it did not address the issue in its objections because the issue had been fully resolved, namely, that Ms. Schnee had been paid in full. (Doc. No. 94.) Defendant completely fails to address the timing of when the issues were resolved relative to the filing of the motion to enforce. Moreover, defendant only indicates that issues related to Ms. Schnee's *payment for past work* had been resolved; defendant makes no mention of the separate finding by the magistrate judge that it was in breach of the agreement to contract with Ms. Schnee or another provider for the provision of services.

4

1  settlement term." (Doc. No. 91 at 8.) Defendant does not deny that the record demonstrates that it has
2  offered the child four options for Lunch Bunch: a religious based group at which a religious message is
3  preached to the attendees; a sign language club; chess club; and student government. (*See* Doc. No.
4  91.) The court agrees with the magistrate judge that the record does not support a finding that any of
5  these options provide "social skills training" promised in the Lunch Bunch provision or any form of
6  "speech services" identified in the general section within which the Lunch Bunch term is located. (*Id.*)
7  The language of the parties' agreement achieved in the mediation before Judge Larson does not change
8  this result; the court interprets that agreement as setting a deadline for compliance, not as a material
9  change to the promised service. Defendant's promise in its reply brief to allow K.M. to participate in
10 one of these groups with an aide (*see* Doc. No. 94) does not fulfill its obligations completely under the
11 term because it omits to address the substance of the requirement that some form of "social skills
12 training" will be provided.

13 Defendant indicates in its objections that it offered K.M. various programs in addition to the
14 Lunch Bunch options, including the "Prepare" and "Second Step" programs as well as the "Linda
15 Mood-Belle" program, the latter of which K.M. has apparently utilized. (Doc. No. 92 at 5.) However,
16 the record does not reflect in any way how these programs satisfy the Lunch Bunch term's
17 requirements, such as the requirement to provide "organized group games and activities" that "create
18 opportunities for social skills training in a group." In a 2019 report, Ms. Schnee provides a detailed
19 discussion of the kinds of training needed by K.M. and explains how social skills training should be
20 provided. (*See* Doc. No. 58-15.) As the magistrate judge explained, defendant provides no cogent
21 explanation as to why Ms. Schnee's recommendations, which included specific recommendations as to
22 the kind of *social skills group* that should be created, were not incorporated into K.M.'s Individualized
23 Education Plan (required under IDEA) via an Amendment. (*See id.*; *see also* Doc. No. 44-1 at 2 ("Ms.
24 Schnee will be contracted with annually to review progress in achieving K.M.'s goals and assess
25 whether services need to be adjusted, via an Administrative Amendment to K.M.'s IEP. . . .").) The
26 magistrate judge's recommendation with regard to this issue will be adopted as well.
27 /////
28 /////

**C.      Objections to Recommended Fee Award for Bringing Motion to Enforce**

Defendant next objects to the magistrate judge's determination that it is appropriate to award attorney's fees to plaintiff in connection with bringing and prosecuting the motion to enforce. Relying on the "American Rule" which generally precludes an award of fees absent statutory authorization, defendant argues that fees cannot be awarded here because there is no statutory or contractual basis for such an award. (*See* Doc. No. 92 at 3.) However, there is, at a bare minimum, a statutory basis for a fee award in this case pursuant to the ADA, which provides that a court, "in its discretion, may allow the prevailing party . . . a reasonable attorney's fee." 42 U.S.C. § 12205. A party may qualify as "prevailing" under the ADA where (1) a settlement agreement and the court's order dismissing the case based upon that agreement provides that the court will retain jurisdiction to enforce the agreement; and (2) the settlement agreement meaningfully alters the legal relationship between parties by requiring the other party "to do something it otherwise would not be required to do." *Jankey v. Poop Deck*, 537 F.3d 1122, 1130 (9th Cir. 2008) (internal citations and quotations omitted). These conditions are clearly satisfied here and defendant does not seriously suggest otherwise.

Defendant maintains, however, that a fee award is explicitly precluded under the terms of the parties' settlement agreement. A prevailing civil rights plaintiff may sue for reasonable attorney's fees "unless the defendant shows that the plaintiff clearly waived fees as part of the settlement [agreement]." *Muckleshoot Tribe v. Puget Sound Power & Light Co.*, 875 F.2d 695, 697 (9th Cir. 1989). A court will "normally determine the sufficiency of a fee release by looking to the language in the settlement agreement." *Id.* at 698. However, "[w]aiver of attorneys' fees should not be presumed from a silent record." *Wakefield v. Mathews*, 852 F.2d 482, 484 (9th Cir. 1988). Rather, "any waiver or limitation of attorney fees in settlements of [civil rights] cases must be clear and unambiguous." *Erdman v. Cochise Cty., Ariz.*, 926 F.2d 877, 880 (9th Cir. 1991). These rules apply with equal force to the waiver of future attorney's fees incurred after the date of the settlement. *See Fitzgerald v. City of Los Angeles*, No. CV 03-01876 DDP (RZx), 2009 WL 960825, at *4 (C.D. Cal. Apr. 7, 2009) (finding that a settlement agreement releasing defendants "from any further obligations to pay any further amounts" to be ambiguous as to whether it precluded an award of attorney's fees for time spent pursuing *post-settlement* matters).

6

Here, the parties' settlement agreement provides in pertinent part that:

> 3. **Attorney fees**. Attorney fees shall be arbitrated in further proceedings by the Hon. David C. Bristow, United States Magistrate Judge (Ret.). . . . The arbitration will be binding, with an award not to exceed $826,901.56 and not to fall below a minimum of $285,000. . . .[2]
>
> ***
>
> 9. **Independent Oversight.**[3]  For three years following full execution of this Agreement, [b]oth parties agree to submit any disputes regarding the implementation of this Agreement to [sic] for 30 days prior to pursuing further due process action. . . . If the parties choose to utilize a mediator other than those provided free of charge by the Office of Administrative Hearings . . . [defendant] shall be responsible for paying for the Neutral's fees, if any.
>
> ***
>
> 10. **Other Costs**. To the extent not set forth expressly in the terms of this Agreement, each party shall bear all fees and costs.
>
> ***
>
> 15. **Covenant Not to Sue**. The Parties covenant that they will not bring or instigate any action or other legal proceeding before any state, federal, or administrative body or agency related to the Released Claims, except as required by law. In the event that any Party does bring or instigate any action or other legal proceeding before any state, federal, or administrative body or agency related to the Released Claims, except as required by law, that Party will indemnify and hold the Released Parties harmless from and against any and all costs and expenses, including reasonable attorneys' fees, arising therefrom.

(Doc. No. 44-1 at 1, 4, 5–6.) Defendant argues that paragraphs 10 and 15 preclude an award of fees here. The magistrate judge rejected defendant's argument with respect to paragraph 10 of the parties' agreement, reasoning that the language therein—"[t]o the extent not set forth expressly in the terms of this Agreement, each party shall bear all fees and costs"—was ambiguous as to whether or not it applied only to fees existing at the time of settlement. (Doc. No. 91 at 10 n.11.) The magistrate judge

---

[2] The arbitrator ultimately awarded plaintiff $667,881.00 in attorney's fees for the nine separate actions covered by the parties' settlement agreement. (*See* Doc. No. 93 at 7 n.12.)

[3] The magistrate judge correctly concluded that this is actually meant to be a mediation provision. (*See* Doc. No. 91 at 5 n.6.)

7

1  also found that the District's position in this regard was inconsistent with the balance of the parties'
2  agreement and would thwart plaintiff's right to seek enforcement of the settlement agreement before
3  this court. (*Id.*) Not only does the undersigned generally agree with this reasoning, the caselaw further
4  counsels against the adoption of defendant's position, since paragraph 10 does not clearly and
5  unambiguously waive plaintiff's right to recover attorney's fees incurred after the settlement. *See*
6  *Fitzgerald*, 2009 WL 960825 at *5–6.

7        Defendant's argument with regard to paragraph 15 of the agreement does not appear to have
8  been raised in its oppositions to the underlying motion to enforce (*see* Doc. Nos. 63, 69, 78) and
9  therefore will be disregarded. *See Friends of the Wild Swan v. Weber*, 955 F. Supp. 2d 1191, 1194 (D.
10  Mont. 2013), *aff'd*, 767 F.3d 936 (9th Cir. 2014) ("A district court is well within its discretion in
11  barring arguments raised for the first time on objections to a magistrate's findings and recommendations
12  absent exceptional circumstances.") (citing *Greenhow v. Secretary of Health & Human Services*, 863
13  F.2d 633, 638–39 (9th Cir. 1988), overruled on other grounds).

14        Defendant did preserve a somewhat related argument regarding paragraph 9 of the agreement,
15  contending that this paragraph "specifically outlined an extrajudicial process for resolving disputes
16  through mediation," pursuant to which "defendant agreed to pay [the] mediator fee if the Parties could
17  not agree to a free OAH mediator." (Doc. No. 94 at 2.) Defendant further argues that "[n]o additional
18  attorney's fees were contemplated within this extrajudicial dispute resolution process." (*Id.*) As
19  mentioned, the parties attended mediation (after much dispute over the selection of a mediator) before
20  Judge Larson, prior to plaintiff bringing the pending motion to enforce. Judge Larson apparently
21  agreed that fees were foreclosed for participating in that mediation in light of paragraph 10's language
22  requiring each party to bear any fees and costs not expressly addressed by the settlement agreement.
23  (*Id.*) Defendants now appear to be suggesting that this determination by Judge Larson should also
24  guide the court's decision with regard to the availability of fees here. Notably, it remains unclear to the
25  undersigned exactly *why* Judge Larson declined to award fees. That said, the present situation is
26  distinct from a settlement agreement-driven mediation. Here, the situation much more obviously
27  triggers application of the caselaw discussed above, including the decision in *Jankey*, which specifically
28  provides for an award of fees when a motion to enforce is filed before a court that the parties agreed

would retain jurisdiction to enforce the terms of a settlement agreement, and in *Fitzgerald*, which stands for the proposition that a waiver of post-settlement attorney's fees must be clear and unambiguous.  There is certainly no clear and unambiguous waiver here and therefore, the court finds that the award of fees is not precluded.

The magistrate judge cogently articulated a rationale for the specific amount of attorneys' fees recommended (including a discussion of the hourly rates requested and number of hours expended) in connection with the bringing of the motion to enforce.  Defendant takes no issue with that reasoning and the undersigned likewise finds no fault with it.  The recommended amount in attorneys' fees will therefore be awarded to plaintiff.

**D.     Objections to Fees on Fees Request**

Lastly, plaintiff requests an additional award of $7,267.50 for the time spent by counsel preparing a response to defendant's objections to the pending findings and recommendations ($6,127.50 for the 13.3[4] hours spent by attorney Goriune Dudukgian.; and $1,140.00 for the 1.9 hours spent by attorney Andrea Marcus).  (Doc. No. 93-1.)  Defendant objects to this request on several grounds.  First, it objects that plaintiff's response to its objections to the findings and recommendations was "voluntary" and therefore should not be compensated.  (Doc. No. 94 at 3.)  Defendant offers no authority to support this assertion and the court has been unable to locate any, perhaps because the assertion is without any foundation in civil practice.  For example, in the context of most civil motions practice, the filing of reply briefs are also voluntary, yet parties are routinely compensated for the attorney time spent preparing such reply briefs.  *See, e.g.*, *Garcia v. Colvin*, No. 1:11-CV-01965-SKO, 2013 WL 5347494, at *6 (E.D. Cal. Sept. 23, 2013) (awarding fees requested for time expended preparing a reply brief).

Second, defendant argues that plaintiff's request is "premature" because the court has not yet ruled on the findings and recommendations to which defendant has objected.  This, however, begs the question of whether the court should grant the request for additional attorneys' fees if, as it does here, it

---

[4] Counsel's declaration indicates that attorney Dudukgian spent only 12.9 hours addressing defendant's objections to the findings and recommendations, but the total requested reflects the full 13.3 hours documented in the billing records at $475/hour for a total of $6,127.50.  (*See* Doc. No. 93-2.)

9

1 adopts the findings and recommendations in all other respects.

2 Somewhat more facially persuasive is defendant's assertion that plaintiff's response may be
3 long-winded and therefore the fee request is unreasonable. However, having reviewed the document in
4 detail, the court disagrees. Defendant chose to object to the findings and recommendations, which is its
5 right. But defendant forgets that the undersigned has not had any opportunity to review this record at
6 all in advance of its review of the pending findings and recommendations. The court found the brief
7 background information provided in plaintiff's response to the objections to be useful and does not
8 view that briefing as excessively lengthy or complex under the circumstances.

9 Finally, defendant argues that plaintiff's request is procedurally defective because it was not
10 raised in the form of a separate motion for fees under Federal Rule of Civil Procedure 54(d)(2)(A),[5]
11 which provides that "[a] claim for attorney's fees and related nontaxable expenses must be made by
12 motion unless the substantive law requires those fees to be proved at trial as an element of damages."
13 This hyper-technical argument ignores the reality that the key purpose underpinning a noticed motion is
14 to give the opposing party notice and an opportunity to respond. *Cf. Pub. Employees for Envtl.*
15 *Responsibility v. U.S. Int'l Boundary & Water Comm'n*, 968 F. Supp. 2d 85, 88 (D.D.C. 2013) (treating
16 a request for fees incurred litigating a fee issue as a separate motion and providing an opportunity for
17 the other party to respond); *see Potter v. Colvin*, No. 14-CV-02562-JSC, 2015 WL 7429376, at *4
18 (N.D. Cal. Nov. 23, 2015) (accepting a "fees on fee" request contained within a reply brief). Here,
19 defendant plainly has had an opportunity to respond to plaintiff's additional fee request and has taken
20 that opportunity to do so; defendant does not suggest that it would have benefitted from any additional
21 time to respond nor that the procedural mechanism used has prejudiced it in any way.

22 The court further finds that the hours expended by plaintiff's counsel on the response to
23 defendant's objections to the findings and recommendations was reasonable; the hourly rates claimed
24 are the same as those adopted by the magistrate judge in relation to the underlying fee award discussed
25 above.
26 /////
27

28 [5] Defendant incorrectly cites this provision as Rule "52(d)(2)(A)." (*See* Doc. No. 94 at 3 n.1.)

Accordingly,

1. The findings and recommendations filed on October 20, 2020 (Doc. No. 91) are adopted in full;

2. In accordance with to those recommendations, to the extent not already accomplished:

   a. **Within ten days** of the restart of Lunch Bunch activities during the remote learning period or within ten days of the return to in-person learning, the District **SHALL** offer the child a Lunch Bunch activity that will be "used to create opportunities for social skills training in a group for K.M." and to offer speech services as described in Ms. Schnees's 2019 report;

   b. **Within ten days**, the District **SHALL** train "all staff working with" K.M. in the chosen Google Docs app and train any newly assigned staff member before beginning work with the child;

   c. **Within ten days**, the District **SHALL** pay the outstanding amount owed to Ms. Schnee, in the amount of $450 for the 2018/2019 academic year, and to offer her or a similar provider a contract for the 2020/2021 academic year without a contract "cap" unilaterally set by the District. The District may work with Ms. Schnee or the substitute provider to establish a cap, provided Ms. Schnee/the alternate provider agrees that the work can be completed within this amount;

   d. **Within 30 days**, the District **SHALL** pay attorneys' fees to attorney Andrea Marcus in the amount of $24,650.00 ($23,510.00+$1,140.00) and to attorney Goriune Dudukgian in the amount of $17,612.50 ($11,485+$6,127.50).

IT IS SO ORDERED.

Dated:   **April 6, 2021**                    _Dale A. Drozd_
                                              UNITED STATES DISTRICT JUDGE

11